RECEIPT NUMBER

*200523489*

**36.**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

CHRIS GLINKA, Individually and On
Behalf of All Others similarly Situated,

        Plaintiff,

vs.

DELPHI CORPORATION; ALAN S.
DAWES; and JOHN DOES 1-25,

        Defendants..

Civil Action No. _____

### CLASS ACTION

```
JUDGE : Friedman, Bernard A.
DECK  : S. Division Civil Deck
DATE  : 04/01/2005 @ 16:40:41
CASE NUMBER : 2:05CV71291
CMP GLINKA V. DELPHI  (DA)
```

MAGISTRATE JUDGE MONA K. MAJZOUB

## CLASS ACTION COMPLAINT

1.    Plaintiff Chris Glinka alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Delphi Corporation ("Delphi" or "Corporation"), including the Delphi Proxy, Forms 8-K and 10-K, and the Forms 11-K filed on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States (the "Salaried Plan" or "Plan"), a review of the Forms 5500 filed by the Plan with the Department of Labor, interviews with participants of the Plan, and a review of available documents governing the operations of the Plan. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION

2.     This is a class action for breach of fiduciary duty brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of the participants and beneficiaries of the Salaried Plan.

3.     Plaintiff is a former employee of Delphi and participated in the Salaried Plan, during the period May 28, 1999 to March 11, 2005 (the "Class Period") to recover losses suffered by the Plan as a result of fiduciary breaches in connection with the investment of assets of the Plan in Delphi common stock at a time when the Defendants knew or should have known Delphi stock was inflated in value as a result of accounting irregularities engaged in by members of Delphi management such that Delphi stock was an unsuitable investment for the Plan.

4.     Plaintiff's claims arise from the failure of the Defendants, who are fiduciaries of the Plan (as detailed below), to act solely in the interest of the participants and beneficiaries of the Plan and to exercise the required care, skill, prudence, and diligence in administering the Plan and investing its assets.  The Defendants violated their fiduciary obligations to the Plan under ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105 by, among other things:

(a)     failing to provide to the other fiduciaries of the Plan complete and accurate information regarding the true financial condition of the company and the risks of investing Delphi stock which such fiduciaries reasonably needed to know to fulfill their duties to the participants and beneficiaries, including their duties to determine the suitability of Delphi stock as an investment of the Plan;

(b)     failing to provide complete and accurate information to the Plan' participants and beneficiaries regarding the Plan's investment options so that participants could make informed decisions with regard to the company stock investment option available under the Plan;

(c)     making affirmative, material misrepresentations to the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock and about Delphi's financial condition through incorporation of the material, untruthful information contained in the

2

Company's Securities and Exchange Commission ('SEC') filings into the Summary Plan Descriptions ("SPD") for the Plan; and

(d)    failing to protect the interests of the participants of the Plan by acting sooner to suspend purchases and acquisitions of Delphi stock by the Plan when Delphi knew or should have known such purchases and acquisitions were not in the best interest of the Plan because Delphi stock was artificially inflated by accounting irregularities engaged in by Delphi.

5.    Plaintiff alleges that as a result of the fiduciary breaches of the Defendants arising out of the acquisition and retention of Delphi stock the Plan suffered substantial losses which the Defendants are personally liable to make good to the Plan pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

6.    The present action seeks to vindicate the rights of the Plan as an entity and seeks to recover losses suffered by the Plan resulting from the breaches of fiduciary duty alleged herein. In addition, the fiduciary breaches asserted by the Plaintiffs were targeted at the Plan as a whole and affected all of the participants of the Plan who participated in the Plan at the time of the losses. Because ERISA authorizes plan participants such as Plaintiff to sue for Plan-wide relief for breaches of fiduciary duty, Plaintiff brings this action on behalf of himself and all participants and beneficiaries of the Plan during the Class Period.

7.    Because the information and documents on which Plaintiff's claims are based are for the most part solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has had the opportunity to conduct discovery, Plaintiff will, to the extent necessary and appropriate, seek leave to amend the Complaint to add such other additional facts as are discovered that further support her claims and to add, if necessary, additional Defendants, whose actions as fiduciaries may have caused losses to the Plan.

3

## II.  JURISDICTION AND VENUE

### A.    *Subject Matter Jurisdiction*

8.      This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA 502(e)(1), 29 U.S.C. § 1132(e)(1).

### B.    *Venue*

9.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the fiduciary breaches for which relief is sought occurred in this District.

## III.  PARTIES

### A.    *Plaintiff*

10.      **Plaintiff Chris Glinka** ("Glinka") is a citizen of the State of Illinois.  Glinka is a former employee of Delphi.  During the Class Period Glinka was a  "participant" in the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States.  The fiduciaries of the Plan acquired and held Delphi stock for the benefit of  Glinka and other participants of the Plan during the Class Period.  Glinka brings this action on behalf of the Plan to recovery losses suffered by the Plan resulting from the acquisition and holding of Delphi stock by the Plan during the Class Period.

### B.    *Defendants*

11.      **Defendant Delphi Corporation** ("Delphi" or the "Corporation") was originally incorporated in late 1998 as Delphi  Automotive  Systems  Corporation as a  subsidiary of

General Motors Corporation ("General Motors" or "GM"). In 1999 GM divested itself of Delphi through an offering of Delphi stock to the public (the "Divestiture" or "Spin-Off"). Delphi is a global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology to vehicle manufacturers and its common stock traded on the New York Stock Exchange during the Class Period. Delphi established the Plan in connection with the Spin-Off effective on May 28, 1999.

12.     As set out more fully herein, Delphi was a fiduciary of the Plan within the meaning of ERISA. Delphi is the Administrator for the Plan pursuant to Article VI, Section 1(C) of the plan document for the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States dated January 2002 (the "Salaried Plan Document ") and all relevant times had responsibility for the day-to-day operation, management, and administration of the Plan. Article IV, Section 1(C) of the Salaried Plan Document.

13.     Delphi, through the Chief Financial Officer of the Company, Defendant Dawes, was privy to confidential information concerning the Company and its operations and knew or should have known that members of upper level management, including Dawes, had engaged in accounting irregularities which artificially inflated the share price of Delphi stock and made it an unsuitable investment for the Plan.

14.     As the Administrator of the Plan, Delphi had a duty to communicate to other fiduciaries of the Plan, including the Executive Committee, General Motors Investment Management Corporation ("GMIMCO"), which served as Named Fiduciary for investments and investment advisor to the Plan, State Street Bank & Trust ('State Street"), which served as

5

15.     Trustee, and the participants of the Plan, true and accurate information regarding the financial condition of the Company so that such entities and persons could make informed decisions regarding the suitability of Delphi stock as a an investment for the Plan.

16.     As the Plan sponsor, Delphi has the fiduciary authority to modify or suspend transfers and withdrawals from the Delphi Stock Fund and thereby exercise authority and control respecting the management or disposition of the assets of the Plan and is a fiduciary of the Plan within the meaning of ERISA.

17.     **Defendant Alan Dawes** ("Defendant Dawes") was at all relevant times the Vice Chairman of the Board of Directors and the Chief Financial Officer of Delphi.  Dawes was named Chief Financial Officer in 1999 and became a Director in 2000.  Defendant Dawes was one of three Inside Directors responsible for the day-to-day operations of the Corporation.  In that capacity he was responsible for maintaining the accuracy of the books and records of the Company and certifying to the SEC and investors in Delphi stock that the financial statement of the Delphi did not contain any untrue statements and fairly presented in all material respects the financial condition of Delphi.  As the Chief Financial Officer of the Company Defendant Dawes was privy to confidential information concerning the Company and its operations and knew or should have known that members of upper level management, including himself as Chief Financial Officer, had engaged in accounting irregularities which artificially inflated the share price of Delphi stock and made it an unsuitable investment for the Plan.

18.     As a member of senior management and the Board of Delphi, the knowledge obtained by Dawes as Chief Financial Officer of Delphi is imputed to the Delphi.

19.     On information and belief Defendant Dawes, acting on behalf of Delphi in his capacity as Chief Financial Officer and Vice Chairman of the Board Defendant, was delegated

6

responsibility by Delphi with respect to the day-to-day operation, management, and administration of the Plan, including the duty to communicate to other fiduciaries of the Plan, including the Executive Committee, GMIMCO, which served as Named Fiduciary for investments an investment advisor to the Plan, State Street Bank & Trust ('State Street"), which served as Trustee, and the participants of the Plan true and accurate information regarding the financial condition of the Company so that such entities and persons could make informed decisions regarding the suitability of Delphi stock as a an investment for the Plan.

20.     **Defendants John Doe 1-25** are other officers, directors and employees of Delphi to whom fiduciary responsibility may have been delegated or who may have acted in a fiduciary capacity with respect to the Plan in connection with the matters alleged herein, including administering the Plan, reviewing the annual financial performance of the Plan, selecting and reviewing the investment options available to Plan participants, conducting Plan-related oversight, and/or communicating with participants regarding the suitability of Delphi stock as an investment option for the Plan.   In these capacities, John Does 1-25 exercised discretionary authority respecting the Plan' management and/or the disposition of the Plan' assets and are fiduciaries of the Plan within the meaning of ERISA.

21.     The John Does may include the following persons or entities who are not named as Defendants at this time because Plaintiffs have insufficient information as to the extent, if any, of the fiduciary obligations owed by these persons or entities to the Plan or the precise involvement and knowledge of these persons or entities with respect to the matters alleged herein.

22.     **Members of the Delphi Corporation Board of Directors Executive Committee** (the "Executive Committee") is the "Named Fiduciary" of the Plan pursuant to

Article VI, Section 1(A) of the Salaried Plan Document.  The Executive Committee which reported to Delphi and its Board of Directors is composed of the Lead Independent Director as chairperson and the chairpersons of the following three standing committees of the Board of Directors, the Compensation Committee & Executive Development Committee, the Audit Committee and the Corporate Governance & Public Issues Committee.  The present members of the Executive Committee are John D. Opie (Chairman), Robert H. Burst, Virgis W. Colbert and David N. Farr.  It is not known who the members of the Executive Committee were who served during the Class Period.  Pursuant to the Plan Document, the Executive Committee has the authority to delegate its responsibilities as Plan Fiduciary to other fiduciaries and to select, appoint, monitor and remove such fiduciaries to which it delegated its responsibilities.

23.     **J.T. Battenburg III** ("Defendant Battenburg")  was at all relevant times, the Chairman of the Board of Directors of Delphi, the Chief Executive Officer, and President. Battenberg was one of three Inside Directors responsible for the day-to-day operations of the Corporation.  In that capacity he was privy to confidential information concerning the Company and its operations and may have known that members of upper level management, including the Chief Financial Officer of the Company, had engaged in accounting irregularities which artificially inflated the share price of Delphi stock and made it an unsuitable investment for the Plan.

24.     Should discovery reveal that the Executive Committee or  Battenburg breached fiduciary obligations owed to the Plan in connection with the matters alleged herein or should discovery reveal the identities of presently unknown co-fiduciaries and other participants in the wrongdoing outlined herein, Plaintiff will seek leave to amend this Complaint to identify those parties or add new defendants and/or new claims.

## IV. THE PLAN

25.     The Salaried Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified cash or deferred arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k). Pursuant to ERISA, the relief requested in this action is for the benefit of the Plan.

26.     According to the Salaried Plan Document attached as exhibits to the 2002 10-K filed by Delphi with the SEC as well as the 11-K's filed by Delphi with the SEC concerning the Plan, the assets of the Salaried Plan are maintained in a single trust, the Delphi Savings Trust ("Master Trust") along with the assets of several other Plans sponsored by Delphi, including the Delphi Person Savings Plan for Hourly-Rate Employees in the United States ("the "Hourly Plan"), administered by the same Trustee, State Street Bank & Trust ('State Street"). Under the Salaried Plan Document the Named Fiduciary for investments and investment advisor to the Plan is GMIMCO. Among the investment options offered by the Salaried Plan is the Delphi Common Stock Fund  (the "Delphi Stock Fund"), an investment option "consisting principally of Delphi common stock." Salaried Plan Document, Art. I, Sec. 5(A), Art. II, 1(A), Art. 4, 1(A) & (C).

27.     During the Class Period, subject to Internal Revenue Service limitations, eligible participants of the Salaried Plan were permitted to elect to make pre-tax and after-tax contributions to the Plan of up to 60% of eligible weekly earning for investment in the investment options offered by the Plan ("Employee Contributions").

28.     These Employee Contribution are held in the Master Trust and invested by the Trustee in investment options offered by the Plan. The majority of the investment options are

9

funds offered by Promark Funds and Fidelity Mutual Funds and at all relevant times during the Class Period Plan offered the Delphi Stock Fund as an investment option.

29.      Under the Salaried Plan fifty percent of the an employee's contributions to the Plan were required to be invested in the Delphi Stock Fund and the remaining 50% of an employee's contributions were at the election of the employee invested in any of the other investment option offered by the Plan. Salaried Plan Document Art. 1, Sec. 5.

30.      Delphi also made matching contributions for all participants of the Salaried Plan in amounts which varied during the Class Period ('Employer Contributions"). Under the terms of the Plan, Delphi's matching contribution were to be invested entirely in the Delphi Stock Fund. *Salaried Plan Document*, Art. I, Section 4(A) and Art. II, Sec. 2(A).

31.      Under the Salaried Plan Document Delphi had the authority to "suspend exchanges involving . . . the Delphi Common Stock Fund offered under the Program." Salaried Plan Document, Art. I, Section 8(G).

32.      During the Class Period  millions of dollars in participant and employer contributions to the Salaried Plan were invested in Delphi stock through the Delphi Stock Fund. According to the Forms 11-K filed by Delphi with the SEC with respect to the Salaried Plan, during the years 1999 through 2003, Delphi made $122,331,000 in contributions to the Salaried Plan 100% of which was invested by the Trustee in the Delphi Stock Fund pursuant the Salaried Plan Document, Art. I, Section 4(A) and Art. II, Sec. 2(A). In addition, participants of the Plan during the years 1999 and 2003 contributed a total of $544,286,000 to the Salaried Plan of which amount 50% was invested by the Trustee in the Delphi Stock Fund pursuant to Art. 1, Sec. 5(A) of the Salaried Plan Document.

## V. FIDUCIARY STATUS OF THE DEFENDANTS

### A.   *Named Fiduciaries*

32.    ERISA requires every Plan to provide for one or more "named fiduciaries," who will have "authority to control and manage the operation and administration of the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

### B.   *De Facto Fiduciaries.*

33.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact acts as fiduciaries, perform fiduciary functions, or hold fiduciary authority.  ERISA makes a person (including a juridical person such as Delphi) a fiduciary

> to the extent ... he exercises any discretionary authority or discretionary control respecting management of such Plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such Plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

34.    Appointing and removing fiduciaries is itself a fiduciary function and persons having this power of appointment and removal are *de facto* fiduciaries.

35.    Employers and their directors and officers also act in a *de facto* fiduciary capacity under ERISA when they communicate with employees about the character and prospects of the company for the purpose of affecting the employees' ERISA Plan elections.

### C.   *All Defendants Are Fiduciaries.*

36.    Defendants are fiduciaries of the Plan during the Class Period because they were so named and/or because they exercised discretionary authority or control respecting

management of the Plan or management or disposition of the Plan's assets or had discretionary authority or responsibility in the administration of the Plan.

37.     Delphi is a fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that, in its capacity as Administrator of the Plan, Delphi possessed and exercised discretionary authority and control with respect to the management and administration of the Plan.  Among other things, as the Administrator of the Plan Delphi, acting through its officers, directors and employees, including Defendant Dawes, possessed and exercised the fiduciary responsibility for communicating to other fiduciaries of the Plan, including the Executive Committee, GMIMCO, and State Street, information which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to participants and beneficiaries, including their duties to determine the suitability of the investment funds offered by the Plan and their duty to disclose and to inform the participants and beneficiaries of the Plan of all information material to the suitability of investments under the Plan.

38.     In addition, as Administrator of the Plan, Delphi, acting through its officers, directors and employees, including Defendant Dawes, possessed and exercised the fiduciary responsibility for communicating to participants and beneficiaries of the Plan complete and accurate information material to the circumstances of participants and beneficiaries, including information sufficient to apprise the participants of the risks associated with investing in any investment option offered by the Plan, including the Delphi Stocks Fund.

39.     Delphi is also a fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that Delphi had authority and control respecting the management or disposition of the assets of the Plan by virtue of the fact that Delphi had the authority under both Plan to suspend transfers and/or exchanges involving the Delphi Common Stock Fund offered

12

under the Plan (Salaried Plan Document, Art. I, Section 8(G)) and the responsibility for "ensuring the confidentiality of information relating to the purchase, holding, and sale of securities" by participants and beneficiaries of the Plan. Salaried Plan Document, Art. IV, Section 19.

40.     In addition, Delphi is a *de facto* fiduciary of the Plan to the extent that Delphi suspended investments in the Delphi Stock Fund thereby exercising authority to do so it exercised authority and control respecting the management or disposition of the assets of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

41.     Defendant Dawes is a *de facto* fiduciary of the Plan in that, on information and belief, Defendant Dawes was among the officers and employees of the Company to which the Delphi  delegated authority to control and manage the operation and administration of the Plan and in that capacity possessed and exercised the fiduciary responsibility for communicating to other fiduciaries of the Plan, including the Executive Committee, GMIMCO, and State Street information which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to participants and beneficiaries, including their duties to determine the suitability of the investment funds offered by the Plan and their duty to disclose and to inform the participants and beneficiaries of the Plan of all information material to the suitability of investments under the Plan.

42.     Defendant Dawes is a defacto fiduciary of the Plan in that, on information and belief, Defendant Dawes is among the officers and employees of the company to which Delphi delegated authority to control and manage the operation and administration of the Plan, and in that capacity, possessed and exercised the fiduciary responsibility for communicating to participants and beneficiaries of the Plan complete and accurate information material to the

circumstances of participants and beneficiaries, including information sufficient to apprise the

participants of the risks associated with investing in any investment option offered by the Plan,

including the Delphi Stocks Fund.

43.    ERISA permits fiduciary responsibilities to be shared among various individuals

and entities.  Given ERISA's functional concept of a fiduciary, absent formal discovery it is

impossible to know which fiduciaries exercised which fiduciary functions.  Based on the

information available to Plaintiff, the Defendants' fiduciary responsibility was at least partially

allocated among Delphi, Dawes and the John Doe Defendants.

## VI.  FACTUAL BACKGROUND OF BREACHES OF FIDUCIARY DUTY

44.    Throughout the Class Period, Delphi common stock was an imprudent investment

due to the stock's artificial inflation as a result of sham sales of assets and other accounting

irregularities engaged in by Delphi and members of Delphi's senior management, including

Defendant Dawes.

### A.    *The Divestiture and Spin-Off of Delphi*

45.    Delphi was incorporated in late1998 as a subsidiary of GM.  During 1998, GM

announced its intention to create and divest itself of a separate company consisting of the GM

businesses and operations that now comprise Delphi and the associated assets and liabilities of

such businesses and operations.  As part of that divestiture GM made an initial offering to the

public in February 1999 of approximately 20% of the common stock of the newly created

company.  In about May, 1999, GM completed the separation of Delphi through the approval of

a  spin-off to holders of GM common stock of the remaining 80% of the Delphi common stock

still held by GM (the "Spin-Off").

**B.**   *Delphi's Accounting Irregularities*

46.     In connection with the Spin-Off Delphi agreed to make $237 million in payments to GM in 2000 to settle warranty claims. Delphi should have accounted for these payments as warranty claims which should have been expensed or charged against the warranty accrual. Instead Delphi reflected these payments as an adjustment to post retirement obligations and improperly amortized the payments over future periods. As a result of these accounting maneuvers Delphi inflated its earnings and caused Delphi common stock to be artificially inflated in value and an imprudent Plan investment during the Class Period.

47.     Beginning in 2000 Delphi also improperly accounted for rebate transactions between Delphi and information technology service providers by failing to recognize certain liabilities associated with the rebate transactions and not appropriately deferring over time the recognition of the payments and credits that were received in conjunction with these agreements for future information technology services until the services were performed.   The impact of these actions which affected rebated transactions occurring between 1999 and 2004 was to decrease expenses and increase the Company's earnings in those years thereby artificially inflating the value of Delphi common stock during the Class Period.

48.     In 2002 and 2003 Delphi improperly deferred recognition of approximately $40 million in expense for payments made for system implementation services. Approximately $23 million of this amount should have been recorded as an expense when services were rendered, rather than deferred and then expensed in later periods. By failing to properly recognize expenses Delphi overstated its income in 2002 and 2003.

49.     In 1999 Delphi improperly recorded $135 million in asset dispositions and recorded pre-tax income of approximately $76 million in 1999 and 2000 from the transactions.

Because Delphi had an obligation to repurchase such materials the transactions should not have been accounted for as asset dispositions and Delphi should not have recognized operating income of $76 million from the dispositions.

50.     In 2000 and 2001 the Company entered into a series of $200 million in wash transactions with third parties for the disposal of inventory, precious metals and other assets which it improperly recorded as sales. In each transaction the Delphi booked an account for the purchase price, and then allowed the third party to settle the account receivable using cash received through financing arranged by Delphi. The impact of these transactions was to improperly increase cash flow from Delphi's operation by approximately $200 million.

## C.     *Delphi's Misrepresented the True Financial Condition of the Company to Investors and the Participants of the Plan*

51.     As a result of these and other accounting irregularities engaged in by Delphi during the Class Period the financial statements of Delphi were materially false and misleading and did not fairly present in all material respects the financial condition, results of operation and cash flows of Delphi during the Class Period. Delphi included these misleading results in press releases as well as in SEC filings, including Forms 10-Q for quarterly results and Forms 10-K for annual results (the "SEC Filings").

52.     Delphi as the Plan Administrator periodically during the Class Period disseminated information to the participants of the Plan including Summary Plan Descriptions ("SPD') for the Plan. On information and belief, the SPDs and other information disseminated by the Delphi to the participants of the Plan incorporated by reference the SEC Filings, which contained misleading information regarding the financial condition of the Delphi and its results of operations.

16

**D.**    *The Truth Begins to Emerge*

53.    On December 8, 2004, the Audit Committee of the Board of Directors announced

that it was directing an independent review of certain accounting practices engaged in by Delphi

during 2000 through 2003 relating.  The Audit Committee also announced that it had engaged

outside counsel to advise it regarding the review and a related investigation by the SEC into

possible accounting irregularities at Delphi.

54.    While the Audit Committee stated that their review was not complete and their

conclusions might change by December 8, 2004, the Committee had preliminarily conclude,

among other things, that improper accounting for certain rebate transactions between Delphi and

information technology service providers had resulted in an understatement of Delphi's expenses

during 2000 through 2003.  On December 7, 2004, the day before the press release Delphi

common stock closed at $8.78 a share.

**E.**    *Delphi Comes Clean*

55.    On March 4, 2005, Delphi issued another press release relating the Audit

Committee review.  The release in part stated as follows:

> . . . the findings made to date by the Audit Committee of the Board of Directors of
> Delphi Corporation (the "Company"), as a result of its ongoing internal investigation,
> indicate that certain prior transactions involving the receipt of rebates, credits or other
> lump-sum payments from suppliers ("Rebate Transactions") and off-balance sheet
> financing of certain indirect materials and inventory were accounted for improperly.
> Based upon information to date, *the Company believes that the improper accounting for
> off-balance sheet financing transactions in 2000 resulted in the Company overstating
> cash flow from operations, determined in accordance with generally accepted
> accounting principles (GAAP), for that year by approximately $200 million and that
> the improper accounting for Rebate Transactions in 2001 resulted in the Company
> overstating pre-tax income under GAAP for that year by approximately $61 million.* In
> addition the Company is still evaluating the impact of adjustments to the Company's
> financial statements for other periods that will be required to be reflected as the Company
> unwinds the improper accounting of the transactions identified below.

17

Although the Company is still evaluating additional transactions, the magnitude of the errors and the preliminary conclusions reached to date with respect to the transactions under review led the Audit Committee to conclude that *the audited financial statements and related independent auditors' reports for 2001 and subsequent periods as a result of the unwinding of the improperly recorded transactions, should no longer be relied upon and a restatement will be required.* As emphasized below, the internal investigation is not complete and although the findings described below have been preliminary discussed with the Company's auditors, Deloitte & Touche LLP, the findings have not been the subject of a review or audit by Deloitte & Touche LLP. Moreover, additional transactions are under examination, and it is possible that the review will determine that they were not properly recorded and that previously issued financial statements for other periods may require additional corrections. (Emphassis added)

56.     The press release further stated that the Audit Committee accepted the resignation, effective March 4, 2005, of the Company's Vice Chairman and Chief Financial Officer, Alan S. Dawes.  Following the announcement of Delphi's intention to restate it audited financial statements for 2001 and subsequent periods because of improper accounting and the resignation of Defendant Dawes the price of Delphi stock closed on March 4, 2005 at $5.46 a share.

57.     On March 11, 2004, Delphi suspended purchases of its shares by participants of the Plan until such time as all of the restatements are filed with the SEC.

58.     On March 22, 2004, Delphi issued another press release and announce that the Audit Committee's internal accounting investigation was substantially complete.  Delph confirmed that the conclusions expressed by the Committee in the March 4, 2005 press release and stated that Delphi's management is in the process of preparing restated financial statement on or before June 30, 2004.

59.     On March 22, 2004, the price of Delphi stock closed at $5.12 a share, down $3.66 per share or more than 41%, since the truth of Delphi's accounting irregularities began to emerge in December of 2004.

F.   *The Defendants Knew or Should Have Known that Delphi Common Stock Was Not a Suitable Investment for the Plan*

60.    Throughout the Class Period the Defendants knew or should have known that because of the accounting irregularities engaged in by Defendants, Delphi's financial statements were materially false and misleading and did not fairly present in all material respects the financial condition, results of operation and cash flows of Delphi during the Class Period. Defendants further knew or should have known that as a result of these irregularities Delphi common stock was inflated in price and no longer a suitable investment for the Plan.

61.    As the fiduciaries responsible for the Administration of the Plan, Defendants had an obligation to communicate the information known to the Defendants regarding the true financial condition of Delphi to other fiduciaries of the Plan including the Executive Committee and its members, Trustee State Street Bank, GMICo, and any other fiduciaries to the Plan who were responsible for reviewing the investment options offered by the Plan, including the Delphi Stock Fund, for the investment of Plan assets. The disclosure of such information to other fiduciaries of the Plan was necessary in order to apprise such fiduciaries of the risks associated with investing in Delphi common stock so that such fiduciaries, to the extent they were had a fiduciary obligations to do so, could make an informed decision as to the suitability of Delphi common stock as an investment option for the Plan.

62.    Despite these obligation Defendants failed to communicate to other fiduciaries of the Plan complete and accurate information regarding the financial condition of the Company and the fiduciaries of the Plan continued to offer the Delphi Stock Fund as an investment option throughout the Class Period even though Delphi stock was artificially inflated in price and no longer a suitable investment for the Plan.

63.         As the fiduciaries responsible for the Administration of the Plan, Defendants had a further obligation to the participants and beneficiaries of the Plan to communicate complete and accurate information to the participants of the Plan regarding the true financial condition of Delphi.  The disclosure of such information was necessary in order to apprise the participants of the risks associated with investing in Delphi common stock so that participants could make an informed decision as to whether to elect to invest assets held in their Plan accounts in Delphi common stock through the Delphi Stock Fund.

64.         Despite these obligation Defendants failed to communicate to participants of the Plan complete and accurate information regarding the financial condition of the Company.

65.         As the Administrator of the Plan, Delphi had an obligation to furnish an SPD to participants of each of the Plan which did not contain any untruthful representations with respect to employer stock as a Plan investment.

66.         Despite this obligation, on information and belief, Delphi disseminated SPDs to the participants of the Plan which incorporated and adopted by reference the information contained within the SEC Filings  made by the Company which were materially false and misleading and did not fairly present in all material respects the financial condition, results of operation and cash flows of Delphi during the Class Period.

67.     As a result of the foregoing failures of the Defendants to communicate complete and accurate information, the fiduciaries of the Plan responsible for reviewing the suitability of the  investment options offered by the Plan were unable to make informed decisions regarding whether Delphi common stock was a suitable investment for the Plan and their participants.  As a consequence, during the Class Period the Plan continued to offer the Delphi Stock Fund as an investment option and the Plan continued to acquire and retain Delphi common stock despite the

20

fact that the stock was artificially inflated in price an no longer a suitable investment for the Plan and their participants.

## VII.  CLASS ALLEGATIONS

68.        Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in their representative capacity on behalf of themselves and a class ("Class") of all persons similarly situated, defined as follows:

> All participants in the Plan and their beneficiaries, excluding the Defendants and their immediate family members, for whose accounts the fiduciaries of the Plan made or maintained investments in Delphi stock for the Plan between May 28, 1999 through March 11, 2005 (the "Class Period").

69.        Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

a.     **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

b.     **Commonality.** There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

i.     Whether Defendants are fiduciaries;

ii.     Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by causing or permitting the Plan to make and maintain investments in Delphi stock, when it was not prudent to do so;

iii.     Whether Defendants breached their fiduciary obligations by failing to provide complete and accurate information to other fiduciaries of the Plan, including the Plan' named fiduciary for investment purposes, concerning Delphi's financial condition and the risk of Delphi stock as a retirement investment which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to the participants and beneficiaries of the Plan;

    iv.    Whether Defendants breached their fiduciary obligations by failing to provide complete and accurate information to the participants and beneficiaries of the Plan concerning Delphi's financial condition and the risk of Delphi stock as a retirement investment to permit the participants and beneficiaries to make an informed decision with respect to investments in Delphi stock;

    v.    Whether Defendants breached their fiduciary obligations by providing participants and beneficiaries of the Plan with an SPD that adopted by reference SEC Filing that contained untruthful representations with respect to employer stock as a Plan investment; and

    vi.    Whether, as a result of fiduciary breaches engaged in by the Defendants, the Plan and its participants and beneficiaries suffered losses.

    c.    **Typicality.** Plaintiff's claims are typical of the claims of the Class.

    d.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and complex litigation.

70.    This action is maintainable as a class action for the following independent reasons:

    (a)    Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants with respect to their obligations under the Plan. Fed. R. Civ. P. 23(b)(1)(A).

    (b)    The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

    (c)    The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

    (d)    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other

available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

71.        There are one or more putative or certified securities class action cases pending against Delphi and certain other Defendants. The claims herein are brought under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in the securities class actions. Indeed, Plaintiff's claims herein cannot be pursued in the securities actions, as the shares of Delphi stock in the Plan were not open market purchases. Accordingly, the named plaintiff in those class actions do not adequately represent the Plaintiff or the Class herein with respect to ERISA claims. Moreover, the named plaintiffs in the securities actions may be subject to defenses, stays of discovery, heightened pleading requirements, and limitations of liability under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(b), and other statutes and rules that do not apply to the claims asserted herein. Furthermore, the shareholder plaintiffs in the securities actions lack standing under ERISA § 502(a), 29 U.S.C. § 1132(a), to bring an action on behalf of the participants of the Plan for allegations of fiduciary breaches.

## VIII.  CLAIMS FOR RELIEF

### COUNT I

### BREACH OF DUTY TO DISCLOSE AND INFORM OTHER FIDUCIARIES OF THE PLAN INCIDENTAL TO THE DEFENDANTS' FIDUCIARY OBLIGATIONS AS ADMINISTRATOR OF THE PLAN

72.    Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

73.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

74.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

75.    Defendants when acting in the capacity as Administrator to the Plan and providing for the day-to-day operations and administration of the Plan had a duty pursuant to the aforementioned sections of ERISA to disclose to and inform the other fiduciaries of the Plan, including the Executive Committee and its members, Trustee State Street Bank, GMIMCo, and any other fiduciaries to the Plan, of information which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to the participants and beneficiaries, including their duties to determine the suitability of the investment funds offered by the Plan, and their duty to disclose

24

and to inform the participants and beneficiaries of the Plan of all information material to the suitability of investments under the Plan.

76.     Defendants breached their duty to inform and disclose by failing to provide to the other fiduciaries of the Plan complete and accurate information regarding the true financial condition of the company and the risks of investing Delphi stock, when Defendants knew or should have known the Company was engaging in accounting irregularities which artificially inflated the value of Delphi stock and rendered the stock an unsuitable retirement investment for the Plan.

## COUNT II

### BREACH OF DUTY TO DISCLOSE AND INFORM PARTICIPANTS OF THE PLAN INCIDENTAL TO THE DEFENDANTS' FIDUCIARYOBLIGATIONS AS ADMINISTRATOR OF THE PLAN

77.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

78.     ERISA §404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

79.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

80.     A plan fiduciary's duties of loyalty and prudence include a duty to disclose and

inform. Participants and beneficiaries. This duty entails: (1) an affirmative duty to inform when

the fiduciary knows or should know that silence might be harmful; and (2) a duty to convey

complete and accurate information material to the circumstances of participants and

beneficiaries.  This duty to disclose and inform recognizes the disparity that may exist, and in

this case did exist, between the training and knowledge of the Defendants, on the one hand, and

the participants and the beneficiaries, on the other.  In a plan with various funds available for

investment, this duty to inform and disclose includes:  (1) the duty to impart to plan participants

material information of which the fiduciary has or should have knowledge in the exercise of

statutorily required care, skill, prudence and diligence that is sufficient to apprise the average

plan participant of the risks associated with investing in any particular fund; and (2) the duty to

correct material representations made to the market about a plan investment about which the

fiduciary knows or should know, in the exercise of statutorily required care, skill, prudence and

diligence.

81.     The duties to disclose and inform owed by Delphi and Defendant Dawes arose out

of the duties which Defendants assumed and exercised as Administrator with respect to the day-

to-day operations and administrations of the Plan.

82.     Defendants breached their fiduciary obligations to disclose and inform

participants of the Plan with respect to employer stock as a Plan investment by failing to

providing complete and accurate information to the Plan's participants and beneficiaries

regarding the risks of investing in company stock in the Plan, when Defendants knew or should

have known the Company was engaging in accounting irregularities which artificially inflated

the value of Delphi stock and rendered the stock an unsuitable retirement investment for the participants and beneficiaries of the Plan.

## COUNT III

### BREACH OF DUTY NOT TO MAKE AFFIRMATIVE MATERIAL MISREPRESENTATIONS TO THE PARTICIPANTS OF THE PLAN

83.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

84.     ERISA §404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

85.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

86.     A plan fiduciary's duties of loyalty and prudence include a duty not to make "affirmative, material, untruthful" representations to a plan participant or beneficiary.  This duty not to misinform recognizes that making such misrepresentations are "inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1), and a fiduciary must exercise the appropriate degree of care, skill, prudence and diligence to avoid such misrepresentations.

87.     The duties only to make truthful representations to the participants and beneficiaries of the Plan about the suitability of the investment in Company stock arose out of

27

the Defendants' duties as Administrator and their obligation to provide for the day-to-day operations and administration of the Plan. Among other things, their responsibilities as Administrator of the Plan, included a duty pursuant to ERISA §§ 101(a), 102(a)(1), and 104(b)(1), 29 U.S.C. §§ 1021(a), 1022(a), and 1024(a), to furnish an SPD including the information required by those Sections of ERISA to the participants and beneficiaries in the Delphi Plan. Accordingly, when the Defendants disseminated an SPD and the information contained therein, the Defendants acted in and made representations in their capacity as the Administrator of the Plan, and acted as a fiduciary in exercising discretionary authority or discretionary control respecting the management of the Plan, and/or discretionary authority or discretionary responsibility in the administration of the Plan.

88.     Rather than providing truthful information to the Plan's participants and beneficiaries regarding the risks of investing in company stock in the Plan, these Defendants, in breach of their fiduciary duties made affirmative, material misrepresentations to the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock and about Delphi's financial condition, as detailed herein, through incorporation of the material, untruthful information contained in the Company's SEC filings into the SPD, which they knew or should have know were untruthful, thereby encouraging participants of the Plan to make substantial investments in Delphi stock in the Plan.

## COUNT IV

### BREACH OF DUTY OF DUTY OF PRUDENCE AND CARE WITH RESPECT TO THE EXERCISE OF AUTHORITY AND CONTROL OVER THE ASSET OF THE PLAN

89.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or the disposition of a plan's assets are responsible for ensuring that the

28

assets of a plan are prudently invested. Furthermore, such fiduciaries have an obligation to suspend or terminate the investment of Plan assets in investments options which the fiduciaries know or through the exercise of due diligence should know are no longer suitable investments for the plan.

90.     Moreover, a fiduciary's duty of loyalty and prudence require it to disregard Plan documents or directives that it knows harm Plan participants or beneficiaries.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Thus a fiduciary may not blindly follow Plan documents or directives that would lead to an imprudent result or that would harm Plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the Plan, including Plan trustees, to do so.

91.     Defendants knew or should have known that as a consequence of accounting irregularities engaged in by the Defendants as alleged herein Delphi stock was inflated in value. Despite this knowledge Delphi failed to suspend exchanges involving the Delphi Common Stock Fund offered under the Plan as it was authorized to do under the Plan Documents or to limit in any way the purchase or acquisition of Delphi stock by the Plan.  Instead Delphi waited until March 11, 2005, before it exercised control or authority over the investment decisions of the Plan and suspended the purchase of Delphi shares by participants of the Plan.

92.     By failing to take action sooner to suspend purchases of Delphi shares by the participants in the Plan when Delphi knew or should have known that Delphi stock was no longer a prudent investment, Delphi breached its fiduciary duty to the participants by failed to take adequate steps to prevent the Plan, and indirectly the Plan' participants and beneficiaries, from suffering losses as a result of the Plan' investment in Delphi stock.

## IX.     CAUSATION

29

93.     The Plan suffered a loss, and the Plaintiff and the other Class members were damaged, because substantial assets in the Plan were invested in Delphi stock during the Class Period in violation of the Defendants' fiduciary duties.

94.     The Plan were substantially invested in Delphi stock at various times during the Class Period even though Delphi stock was not a prudent investment for the Plan for the reasons alleged herein.  As a result of Defendants' actions, a substantial portion of the value of the Plan' assets, to the extent the Plan' assets consisted of Delphi stock, has been destroyed and Defendants are liable for all losses suffered by the Plan and the Participants.

95.     The fiduciaries of the Plan were responsible for the prudence of investments in the Plan during the Class Period unless participants in the Plan themselves exercised effective and informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated under it.  Those provisions were not complied with here; instead of taking the necessary steps to ensure effective participant control by complete and accurate disclosure and regulatory compliance, the Defendants did exactly the opposite.  As a consequence, participants in the Plan did not control the Plan' assets that were invested in Delphi stock, and the Defendants remained entirely responsible for ensuring that such investments were and remained prudent.  The Defendants' liability to Plaintiff for damages stemming from imprudent investments of the Plan' assets in Delphi stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period, without regard to whether or not the participants relied upon statements, acts, or omissions of Defendants.

96.     Had the Defendants properly discharged their fiduciary to inform and disclose the Plan fiduciaries would have known that Delphi was an imprudent investment for the Plan and in all likelihood taken appropriate steps to prevent future purchases of Delphi stock as long as it remained artificially inflated in value and unsuitable investment option for the Plan.

97.     Plaintiff further contends that the Plan suffered a loss, and Plaintiff and the other Class members were damaged, by Defendants' affirmative, material misrepresentations to the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock. Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant that results in harm to the participant, the participant is presumed, as a matter of law, to have relied upon such misrepresentations and omissions to his or her detriment. Here, Defendants' above described statements, acts and omissions constituted misrepresentations and omissions that further caused Plaintiff's losses.

## X.  REMEDY FOR BREACHES OF FIDUCIARY DUTIES

98.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a Plan's participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such Plan any losses to the Plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

99.     With respect to calculation of the losses to a Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, where alternative investments

31

were available, that the investments made or maintained in the challenged investment would

have instead been made in the most profitable investment available. In this way, the remedy

restores the value of the Plan' assets to what they would have been if the Plan had been properly

and prudently administered.

100.    Plaintiff and the Class are therefore entitled to relief from the Defendants in the

form of:

a.      monetary payment from the Defendants to the Plan to make good to the
Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an
amount to be proven at trial based on the principles described above, as required by ERISA §
409(a), 29 U.S.C. § 1109(a);

b.      injunctive, monetary, and other appropriate equitable relief to remedy the
breaches alleged above, as provided by ERISA § 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3);

c.      reasonable attorney's fees and expenses as provided by ERISA § 502(g),
29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law;

d.      taxable costs; and,

e.      interest on some or all of these amounts as provided by law.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.      A Declaration that the Defendants breached their ERISA fiduciary duties to the

Plan participants and beneficiaries;

C.      An Order compelling the Defendants to make good to the Plan all injury to the

Plan resulting from these breaches of fiduciary duty, including:

1.      restoration to the Plan for losses resulting from imprudent investment of

the Plan' assets;

     2.     restoration to the Plan of all profits that the Plan would have made had the Defendants fulfilled their fiduciary obligations; and,

     3.     other equitable restitution and appropriate equitable monetary relief.

D.     An Order enjoining Defendants from any further violations of their ERISA fiduciary obligations;

E.     An Order permanently removing the Defendants from any position of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

F.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the Common Fund Doctrine;

H.     An Order awarding such other and further relief as the Court deems equitable and just.

Dated April 1, 2005

MORGAN & MEYERS, PLLC

Jeff Meyers
Morgan & Meyers, PLC  (MI Bar No. P34348)
3200 Greenfield,
Suite 320
320 Dearborn, MI 48120
(313) 961-0130

COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
Bruce F. Rinaldi
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
Derek W. Loeser
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
T: 206 623-1900
F: 206 623-3384

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**05 - 71291**

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| CHRIS GLINKA, Individually and On Behalf of All Others similarly Situated, | DELPHI CORPORATION; ALAN S. DAWES; and JOHN DOES 1-25, |

(b)  County of Residence of First Listed Plaintiff  **Cook County, IL**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Oakland County, MI**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**58888**

**BERNARD A. FRIEDMAN**

**MAGISTRATE JUDGE MONA K. MAJZOUB**

(c)  Attorney's (Firm Name, Address, and Telephone Number)

Morgan & Meyers, PLC, 3200 Greenfield, Suite 260, Dearborn, MI 48120  313-961-0130

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☒ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☒ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
"ERISA"  29 USC section 1132

Brief description of cause:
Breach of fiduciary duty brought pursuant to section 502 of the ERISA, 29 USC section 1132

| VII. REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☐ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE  Hon. Paul Borman | DOCKET NUMBER  2: 05-CV-70882 |
|---|---|---|---|

DATE  **4/1/05**      SIGNATURE OF ATTORNEY OF RECORD      **P34348**

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## PURSUANT TO LOCAL RULE 83.11

1.      Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.      Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☑ Yes
☐ No

If yes, give the following information:

Court: _United. STATES District Court EASTern Dist. of MICH_

Case No.: _0.5 cv 70882 (PDB XSDP)_

Judge: _PAUL D BORMAN._

Notes : _____